IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

IN RE: JEFFERY LEWIS WHITE, DEBTOR           CASE NO.: 5:10-bk-16633
                                             CHAPTER 7

IN RE: JENNIFER GAY WHITE, DEBTOR            CASE NO.: 5:10-bk-16666
                                             CHAPTER 7

### MEMORANDUM OPINION AND ORDER

Jeffery Lewis White and Jennifer Gay White (collectively, "debtors" or individually, "Jeffery White" and "Jennifer White") filed separate chapter 7 bankruptcy cases in September 2010. In each case, Commercial Bank & Trust Company ("Commercial Bank") filed its *Objection to Debtor's Claimed Exemption/Motion for Relief from Stay* (individually, "Objection" and "Motion for Relief"). Thereafter, each debtor filed a *Motion to Avoid Lien* ("Motion to Avoid") with respect to the lien asserted by Commercial Bank. Because the pleadings filed in both cases raised common issues of law and fact, the court consolidated the hearings by its order dated December 20, 2010.[1]

The parties agreed that this matter could be resolved by summary judgment. Accordingly, Commercial Bank filed a *Motion for Summary Judgment*, and the debtors filed a *Response to Motion for Summary Judgment and Counter Motion for Summary Judgment* ("Counter Motion"). Commercial Bank replied to the Counter Motion by filing a *Response to Counter Motion for Summary Judgment*.

---

[1] Although the hearings have been consolidated, Jeffery White and Jennifer White maintain separate bankruptcy cases. For the purposes of this opinion, the duplicative pleadings will be referred to singularly.

1

Entered On Docket: 04/29/2011

## I.  Introduction

While married, the debtors defaulted on collateralized loans from Commercial Bank.  A foreclosure sale occurred but, because the judgment was not fully satisfied, Commercial Bank asserted a judgment lien against additional property held free and clear by the debtors.  Before Commercial Bank could foreclose on its judgment lien, the debtors divorced, divided the additional property, filed two separate bankruptcies, and claimed the resulting two tracts as exempt homestead.  Commercial Bank asserts that the debtors are not entitled to claim an exemption or to avoid Commercial Bank's lien because the debtors' current interests in the property at issue were acquired after Commercial Bank's lien fixed.

For the reasons stated herein, Commercial Bank's Motion for Summary Judgment is granted in part, and the debtors' Counter Motion is denied.  Commercial Bank's Objection is denied.  The debtors' Motion to Avoid is denied.  Commercial Bank's Motion for Relief is granted, and Commercial Bank may proceed to enforce its judgment lien.

## II.  Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K).  The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014.

## III.  Findings of Fact

Jeffery White and Jennifer White married on April 27, 1991.[2]  As a married couple,

---

[2] The court adopts the facts as presented in each party's summary judgment pleadings and attached exhibits.

2

they acquired approximately 220 acres of land near Wilmar, Arkansas. (Br. in Supp. of Mot. for Summ. J. 1, Dec. 23, 2010, ECF Nos. 40, 39.) The debtors then sold approximately eighty acres but retained the remaining 160 acres (the "Wilmar Property"). The proceeds from the sale were used to pay the debt on the original 220 acres. The debtors never mortgaged this property to Commercial Bank.

From June 2004 through August 2007, Commercial Bank made the debtors eight loans, secured by personal and real property other than the Wilmar Property. The debtors ultimately defaulted on these notes, and Commercial Bank foreclosed. The Drew County Circuit Court foreclosure decree, dated January 22, 2009, granted a $241,243.14[3] judgment in favor of Commercial Bank. On February 26, 2009, the foreclosure sale was completed, but a deficiency remained. (Br. in Supp. of Mot. for Summ. J. 1-2, Dec. 23, 2010, ECF Nos. 40, 39.) This deficiency represents the judgment lien that the debtors now seek to avoid.

Due to the deficiency, Commercial Bank filed a second complaint for foreclosure on December 17, 2009. (Br. in Supp. of Mot. for Summ. J. 1-2, Dec. 23, 2010, ECF Nos. 40, 39.) This complaint recited that $161,489.18 was still owed from the January 22, 2009 judgment. (Br. in Supp. of Mot. for Summ. J. 1-2, Dec. 23, 2010, ECF Nos. 40, 39.) In its second complaint, Commercial Bank asserted a judgment lien and sought to foreclose on the Wilmar Property to satisfy the balance of the outstanding judgment.

While the second complaint was pending, the debtors divorced on June 29, 2010. (Decree of Divorce 15-16, Dec. 23, 2010, ECF Nos. 40-1, 39-1.) The court awarded custody of

---

[3] Commercial Bank provides this figure in its *Brief in Support of Motion for Summary Judgment*. The court's calculation yields a total of $291,349.41, however. Because the parties do not dispute the $241,243.14 figure, that amount is used in this opinion.

one of the couple's two children to each debtor. The debtors divided the Wilmar Property pursuant to a June 21, 2010 property settlement agreement. (Child Custody and Property Settlement Agreement 18-19, Dec. 23, 2010, ECF Nos. 40-1, 39-1.) The property settlement agreement states, "[t]his Agreement shall be construed and governed in accordance with the laws of the State of Arkansas." (Child Custody and Property Settlement Agreement 21, Dec. 23, 2010, ECF Nos. 40-1, 39-1.) The circuit court's decree further provided that, as a result of the divorce, it shall be "as though the marriage relation between [the debtors] had never existed." (Child Custody and Property Settlement Agreement 20, Dec. 23, 2010, ECF Nos. 40-1, 39-1.) The property settlement agreement also states, "each of the parties may . . . freely dispose of his or her [real] property . . . ." (Child Custody and Property Settlement Agreement 20, Dec. 23, 2010, ECF Nos. 40-1, 39-1.) The property settlement agreement continues that the parties may "renounce and release" all interests and rights that they may have against each other with respect to real property. (Child Custody and Property Settlement Agreement 20, Dec. 23, 2010, ECF Nos. 40-1, 39-1.)

In July 2010, the debtors executed reciprocal quitclaim deeds conveying each debtor's individual property rights with regard to the Wilmar Property. The quitclaim deeds divided the Wilmar Property, granting separate parcels to each debtor. In his Schedule A, Jeffery White lists rural acreage in Wilmar, Arkansas.[4] He makes no mention of this property being jointly owned. Jennifer White's Schedule A likewise evidences individual rather than joint ownership and lists the acreage that she holds as a "[f]ee [o]wner." (Pet. 6, Sept. 13, 2010, ECF No. 1.) As a result,

---

[4] The court takes judicial notice of the schedules filed in the debtors' respective bankruptcy cases.

4

each debtor now separately owns in fee one half of the former Wilmar Property.

Subsequently, the Drew County Circuit Court entered a second foreclosure decree on August 4, 2010, stating that "the January 22, 2009 Foreclosure Decree constituted a judgment lien against the Wilmar [P]roperty." (Br. in Supp. of Mot. for Summ. J. 2, Dec. 23, 2010, ECF Nos. 40, 39.) A second foreclosure sale, the sale of the Wilmar Property, was scheduled for September 14, 2010.

Jeffery White filed for bankruptcy relief on September 10, 2010; Jennifer White filed on September 13, 2010. These filings stayed the September 14, 2010 foreclosure sale. As a result of their divorce settlement, Jeffery White and Jennifer White have each, in their separate bankruptcy cases, claimed a homestead exemption of eighty[5] acres in fee of the former Wilmar Property.

Commercial Bank filed its Objection and Motion for Relief, arguing that the debtors are not entitled to claim homestead exemptions on property that they received pursuant to their divorce settlement because Commercial Bank's lien on that property fixed prior to the debtors' divorce. (Objection to Debtor's Claimed Exemption/Mot. For Relief from Stay 3, Oct. 10, 2010, ECF Nos. 10, 9.) Jeffery White and Jennifer White now seek to avoid the judgment lien resulting from the original, unsatisfied foreclosure decree. All parties agreed that this matter

---

[5] Commercial Bank asserts that the debtors have each claimed seventy acres as exempt under Arkansas's rural homestead law. In their Counter Motion, the debtors claim that they are each entitled to an eighty-acre homestead exemption. In its response, Commercial Bank states that it is "unaware of the exact number of acres that each [d]ebtor owns." (Resp. to Counter Mot. for Summ. J. 1, Feb. 3, 2011, ECF Nos. 50, 52.) Jeffery White's Schedule C lists seventy acres as exempt, and Jennifer White's Schedule C lists the value, rather than the acreage, of her exempt real property. Because the parties have conceded that the Wilmar Property consists of 160 acres, which were divided between the debtors pursuant to their property settlement agreement, the eighty-acre figure is used in this opinion.

could be resolved by summary judgment.[6]

## IV. Discussion

Commercial Bank concedes that the debtors acquired the Wilmar Property prior to the creation and attachment of Commercial Bank's lien. Commercial Bank argues, however, that subsequent actions taken by the debtors, specifically their divorce and the resultant property settlement, extinguished the debtors' original property interest, creating two wholly new interests in each of the debtors. Commercial Bank concludes that, because its lien fixed prior to the creation of these new interests, the debtors may not use 11 U.S.C. § 522(f)(1)(A) to avoid the "fixing" of Commercial Bank's lien.

Federal Rule of Bankruptcy Procedure 7056 provides that summary judgment shall be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. BANKR. P. 7056(a) (2011). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)(1)(A) (2011)).

### A. Section 522(f)(1)(A)

Section 522(f)(1)(A) of the Bankruptcy Code provides in relevant part:

Notwithstanding any waiver of exemptions . . . the debtor may avoid the fixing of
a lien on an interest of the debtor in property to the extent that such lien impairs
an exemption to which the debtor would have been entitled under subsection (b)

---

[6] In its pleadings, Commercial Bank raised other bases for its Objection but did not pursue or factually develop these bases in its Motion for Summary Judgment. Additionally, because of the court's decision herein, the court need not consider these other arguments.

>   of this section, if such lien is—
>     (A) a judicial lien . . . .

11 U.S.C. § 522(f)(1)(A) (2011).  The debtors do not dispute that Commercial Bank obtained a judicial lien against the Wilmar Property.  The sole question before this court is whether § 522(f)(1)(A) permits the debtors to avoid the fixing of Commercial Bank's judgment lien against their now separate tracts of land.

The United States Supreme Court faced a similar question in the controlling case of *Farrey v. Sanderfoot*.  500 U.S. 291, 292 (1991) (analyzing whether the debtor could avoid his former spouse's judicial lien, which arose from their divorce decree).  In *Sanderfoot*, the Court outlined the analytical framework that courts must apply when considering questions of lien avoidance under § 522(f)(1).  *See Id*. at 295-96, 299.  The Court, applying principles of strict construction, determined that the term "fixing" creates a temporal requirement, which must be met before a lien may be avoided.  *Id*. at 296-97.  The Court held that "§ 522(f)(1) of the Bankruptcy Code requires a debtor to have possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that interest."  *Id*. at 301.

The Court explained, "[t]he key portion of § 522(f) states that 'the debtor may avoid the *fixing* of a lien on an interest . . . in property.'"  *Id*. at 296 (emphasis added).  "The statute does not say that the debtor may undo a lien on an interest in property."  *Id*.  Instead, under principles of strict construction, § 522(f)(1) only allows for the avoidance of a lien where "the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest . . . ."  *Id*.  "Whether [the debtor] ever possessed an interest to which the lien fixed, before it fixed, is a question of state law."  *Id*. at 299.

7

## B. Arkansas Law

In its Motion for Summary Judgment, Commercial Bank asserts that the "[d]ebtors are not entitled to claim an exemption . . . as the [d]ebtors' interest in said property was obtained after Commercial Bank['s] lien had already attached." (Mot. for Summ. J. 1, Dec. 23, 2010, ECF Nos. 39, 38.) This, in effect, conflates two arguments: (1) the validity of the claimed exemptions; and (2) the issue of whether the lien can be avoided. Section 522's temporal fixing requirement does not apply to the underlying question of whether the debtors may each claim eighty acres as exempt rural homestead. Therefore, the court must apply Arkansas law to determine the debtors' interests when they acquired the Wilmar Property and the effect, if any, of the debtors' subsequent divorce and property settlement.

### *i. Arkansas Homestead Law*

Debtors in bankruptcy may elect to exempt real property under state law. *See* 11 U.S.C. § 522(b)(1) (2011) (allowing debtors to choose state or federal exemptions). Under Arkansas law, homestead is afforded to any Arkansas resident "who is married or the head of a family." ARK. CODE ANN. § 16-66-210(b) (2010). A rural homestead "shall consist of no more than one hundred sixty (160) acres of land . . . . The homestead shall not exceed in value the sum of two thousand five hundred dollars ($2,500), but, in no event shall the homestead be reduced to less than eighty (80) acres, without regard to value." ARK. CODE ANN. § 16-66-210(c)(1). Courts have explained that "if a rural homestead exceeds $2,500 in value, the debtor may claim a homestead exemption by showing that the area claimed as exempt does not exceed eighty acres in size." *United States v. Fincher*, 593 F.3d 702, 706 (8th Cir. 2010) (citations omitted).

It is undisputed that the debtors are Arkansas residents. Additionally, for the purposes of this opinion, each debtor is the head of a separate household. During their marriage, the debtors had two children and, pursuant to their divorce decree, each debtor received custody of one child upon the dissolution of the marriage. Further, under Arkansas law, each of the debtors may exempt up to eighty acres of rural property without regard to value. It is undisputed that each debtor owns eighty acres of the former Wilmar Property as a result of their property settlement agreement. Each debtor now seeks to exempt his or her respective eighty acres under Arkansas law. Commercial Bank does not assert that either debtor has sought to exempt more than the allowed acreage. Because each debtor is an Arkansas resident, is head of a household, and has claimed the appropriate acreage, the debtors are, for the purposes of this opinion, entitled to claim their respective eighty acres as exempt under Arkansas law.

## ii. Arkansas Marital Property Law

Section 9-12-315 of the Arkansas Code defines "marital property" as "all property acquired by either spouse subsequent to the marriage . . . ." ARK. CODE ANN. § 9-12-315(b) (2010). "There is a presumption that all property acquired during a marriage is marital property." *McKay v. McKay*, 8 S.W.3d 525, 529 (Ark. 2000) (citations omitted). Therefore, "[t]he general rule in Arkansas is that once property is placed in both spouses' names, there is a presumption that the property is held in tenancy by the entirety." *Id*. (citations omitted).

A tenancy by the entirety vests in each spouse an undivided interest in the whole estate and a right of survivorship. *See, e.g.*, *Butcher v. Beatty*, No. 09-1169, 2010 WL 987048, at *2 (Ark. Mar. 18, 2010). Only death, divorce, or the "voluntary action of both parties" can sever a tenancy by the entirety. *Id*. (citing *Lowe v. Morrison*, 711 S.W.2d 833, 834 (Ark. 1986)). It is

essential that neither spouse can unilaterally convey or encumber tenancy by the entirety property or the other spouse's right of survivorship. *Lofton v. Lofton*, 745 S.W.2d 635, 641 (Ark. Ct. App. 1988) (Jennings, J., dissenting).

Arkansas Code Annotated § 9-12-317 provides for the dissolution of a tenancy by the entirety upon divorce:

> [W]hen any circuit court in this state renders a final decree of divorce, any estate by the entirety or survivorship in real or personal property held by the parties to the divorce shall be *automatically dissolved* unless the court order specifically provides otherwise, and in the division and partition of the property, the parties shall be treated as tenants in common.

ARK. CODE ANN. § 9-12-317(a) (2010) (emphasis added); *see also Rodgers v. Rodgers*, 611 S.W.2d 175, 176 (Ark. 1981) (stating, "[u]pon an Arkansas divorce the estate is automatically dissolved . . . converting it into a tenancy in common . . . .").

A tenancy in common is "the most common form of concurrent ownership." *United States v. Craft*, 535 U.S. 274, 279 (2002) (citation omitted). Tenants in common "each ow[n] a separate fractional share in undivided property." *Id.* at 279-80 (citation omitted). Unlike a tenancy by the entirety, a tenancy in common has no right of survivorship. *Courtney v. Courtney*, 752 S.W.2d 40, 43 (Ark. 1988). Another distinction between the two types of tenancies is that "[t]enants in common may each unilaterally alienate their shares through sale or gift or place encumbrances upon these shares." *Craft*, 535 U.S. at 280.

In the present case, the debtors married on April 27, 1991. During their marriage, they acquired the Wilmar Property. Because they purchased the Wilmar Property during their marriage, Arkansas law presumes that the Wilmar Property is marital property. Commercial Bank has not challenged this presumption, and the debtors have not suggested otherwise.

10

Therefore, the debtors possessed the Wilmar Property as tenants by the entirety. Commercial Bank's judgment lien, which the debtors now seek to avoid, fixed on January 22, 2009.

On June 29, 2010, the debtors divorced. The property settlement agreement states, "[t]his Agreement shall be construed and governed in accordance with the laws of the State of Arkansas." (Child Custody and Property Settlement Agreement 21, Dec. 23, 2010, ECF Nos. 40-1, 39-1.) Arkansas law presumes that a tenancy by the entirety is automatically dissolved upon the entry of a final decree of divorce. ARK. CODE ANN. § 9-12-317(a). This presumption is strengthened by the circuit court's decree that, as a result of the divorce, it shall be "as though the marriage relation between [the debtors] had never existed." (Child Custody and Property Settlement Agreement 20, Dec. 23, 2010, ECF Nos. 40-1, 39-1.) Therefore, the debtors' divorce extinguished the tenancy by the entirety and created a tenancy in common with respect to the Wilmar Property.

The creation of a tenancy in common is further evidenced by the language of the property settlement agreement, which states, "each of the parties may . . . freely dispose of his or her [real] property . . . ." (Child Custody and Property Settlement Agreement 20, Dec. 23, 2010, ECF Nos. 40-1, 39-1.) The property settlement agreement continues that the parties may "renounce and release" all interests and rights that they may have against each other with respect to real property. (Child Custody and Property Settlement Agreement 20, Dec. 23, 2010, ECF Nos. 40-1, 39-1.) The right of each debtor to freely dispose of his or her property is contrary to the very definition of a tenancy by the entirety. Instead, this right is characteristic of a tenancy in common.

Further, the debtors' respective bankruptcy petitions indicate that their interests in the former Wilmar Property changed after the divorce. Pursuant to the terms of their property settlement agreement, the debtors executed reciprocal quitclaim deeds. The quitclaim deeds divided the Wilmar Property, granting separate parcels to each debtor. In his Schedule A, Jeffery White lists rural acreage in Wilmar, Arkansas. He makes no mention of this property being jointly owned. Jennifer White's Schedule A likewise evidences individual—rather than joint—ownership and lists the acreage that she holds as a "[f]ee [o]wner." (Pet. 6, Sept. 13, 2010, ECF No. 1.) Thus, the debtors' respective bankruptcy petitions make clear that the property was divided and that their property interests changed.

### C.  The *Sanderfoot* Precedent

Under Arkansas law, the debtors' interests in their real property changed after Commercial Bank's lien attached. Therefore, the court must determine whether the debtors may utilize § 522(f)(1)(A) to avoid Commercial Bank's lien. As referenced earlier, the United States Supreme Court addressed similar issues involving divorce and lien avoidance under § 522(f)(1) in *Farrey v. Sanderfoot*. While the *Sanderfoot* decision has not received universal support,[7] this court recognizes it as binding precedent.

During their marriage, Jeanne Farrey and Gerald Sanderfoot built a home on twenty-

---

[7] "The analytical shortcomings of [*Sanderfoot's*] approach, making timing the critical inquiry, have been highlighted in bankruptcy treatises." *In re Ashcroft*, 415 B.R. 428, 432 (Bankr. D. Idaho 2008) (citing *Weeks v. Pederson* (*In re Pederson*), 230 B.R. 158, 161-62 (B.A.P. 9th Cir. 1999) (citations omitted)); *see also, e.g.*, 4 COLLIER ON BANKRUPTCY ¶ 522.11[4] (16th ed. 2010) (noting the myriad of potential problems posed by *Sanderfoot's* analysis).

seven acres in Wisconsin. *Sanderfoot*, 500 U.S. at 292. Farrey and Sanderfoot later divorced, and the Wisconsin Circuit Court for Outagamie County "awarded each party one-half of their net . . . marital estate." *Id*. at 293. Additionally, "[t]he decree granted Sanderfoot sole title to all the real estate and the family house . . . and most of the personal property." *Id*. In turn, "Farrey received the remaining items of personal property and the proceeds from a court-ordered auction of the furniture from the home." *Id*. "To ensure that the division of the estate was equal, the court ordered Sanderfoot to pay Farrey $29,208.44 . . . ." *Id*. "To secure this award, the decree provided that Farrey 'shall have a lien against [Sanderfoot's] real estate property . . . .'" *Id*.

Sanderfoot failed to make the payment to Farrey; rather, he filed for chapter 7 relief. *Sanderfoot*, 500 U.S. at 293. "Sanderfoot listed the marital home and real estate on the schedule of assets . . . and listed it as exempt homestead property" under Wisconsin's homestead exemption. *Id*. at 293-94. "He also filed a motion to avoid Farrey's lien . . . claiming that Farrey possessed a judicial lien that impaired his homestead exemption." *Id*. at 294. "Farrey objected to the motion," arguing that § 522(f)(1) permits "the avoidance of a lien only where the lien attached to the debtor's interest at some point after the debtor obtained the interest." *Id*. at 294, 296.

In analyzing whether Farrey's lien could be avoided, the Court explained that § 522(f)(1) "cannot be concerned with liens that fixed on an interest before the debtor acquired that interest." *Sanderfoot*, 500 U.S. at 298. The Court continued:

> Conversely, the text, history, and purpose of § 522(f)(1) also indicate what the provision is *not* concerned with. It cannot be concerned with liens that fixed on an interest before the debtor acquired that interest. Neither party contends otherwise. Section 522(f)(1) does not state that any fixing of a lien may be avoided; instead, it permits avoidance of the "fixing of a lien on an interest of the debtor." If the fixing took place before the debtor acquired that interest, the

13

> "fixing" by definition was not on the debtor's interest. Nor could the statute apply given its purpose of preventing a creditor from beating the debtor to the courthouse, since the debtor at no point possessed the interest without the judicial lien. There would be no fixing to avoid since the lien was already there. To permit lien avoidance in these circumstances, in fact, would be to allow judicial lienholders to be defrauded through the conveyance of an encumbered interest to a prospective debtor. For these reasons, it is settled that a debtor cannot use § 522(f)(1) to avoid a lien on an interest acquired after the lien attached. As before, the critical inquiry remains whether the debtor ever possessed the interest to which the lien fixed, before it fixed. If he or she did not, § 522(f)(1) does not permit the debtor to avoid the fixing of the lien on that interest.

*Id*. at 298-99 (citations omitted).

Applying *Sanderfoot* to the present case, the critical inquiry is whether the debtors possessed their current interests before Commercial Bank's lien fixed. If they did not, § 522(f)(1)(A) will not permit the debtors to avoid the fixing of Commercial Bank's lien. In *Sanderfoot*, the Court held that, "[s]ince Sanderfoot never possessed his new fee simple interest before the lien 'fixed,' § 522(f)(1) is not available to void the lien." 500 U.S. at 300. Applying that rationale to the present case, this court reaches the same result.

The debtors acquired the Wilmar Property as tenants by the entirety. Subsequently, Commercial Bank obtained its judgment lien. Commercial Bank's lien fixed on the debtors' pre-existing interests as tenants by the entirety. Under Arkansas law, their divorce automatically dissolved their tenancy by the entirety and simultaneously created a tenancy in common—a wholly new property interest. Thereafter, the debtors used quitclaim deeds to further change their interests as tenants in common to individual fee ownership. The debtors never possessed their interests as tenants in common or in fee before Commercial Bank's lien "fixed." Thus, they may not use § 522(f)(1)(A) to avoid the lien.

14

The court appreciates that this result may appear unfair given that, as a married couple, the debtors enjoyed a collective homestead exemption under Arkansas law. Commercial Bank's lien may have been amenable to avoidance had the debtors filed a joint bankruptcy petition without the significant intervening changes in ownership.

The debtors, however, chose to alter their ownership interests after the "fixing" of Commercial Bank's lien. Thus, they no longer have the same property interests, either collectively or individually, in the former Wilmar Property. The property interests they currently possess are not the same interests they had prior to the fixing of Commercial Bank's lien.

Again, this result may strike some readers as illogical because the debtors appear to have owned the Wilmar Property both before and after their divorce with some degree of homestead protection. However, their ownership interests changed significantly as a result of the divorce and the quitclaim deeds. The Court's decision in *Sanderfoot* reflects the long-standing and appropriate adherence to the strict sanctity of the specific incidents of real property ownership.

## V. Conclusion

For the reasons stated herein, Commercial Bank's Motion for Summary Judgment is granted in part, and the debtors' Counter Motion is denied. Commercial Bank's Objection is denied. The debtors' Motion to Avoid is denied. Commercial Bank's Motion for Relief is granted, and Commercial Bank may proceed to enforce its judgment lien.

15

IT IS SO ORDERED.

Dated this 29th day of April, 2011.

                                                    RICHARD D. TAYLOR
                                                    U.S. BANKRUPTCY JUDGE

cc:      Billy J. Hubbell, Attorney for Jeffery Lewis White
         Kenneth A. Harper, Attorney for Jennifer Gay White
         Hani W. Hashem, Attorney for Commercial Bank & Trust Company
         Linda Lamb, Attorney for Commercial Bank & Trust Company
         M. Randy Rice, Chapter 7 Panel Trustee
         Jeffery Lewis White, Debtor
         Jennifer Gay White, Debtor